IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KURTIS LEE KILLSONTOP, | CV 17–111–M–DLC–JCL |
| Petitioner, | |
| vs. | ORDER |
| LYNN GUYER, | |
| Respondent. | |

Before the Court is the Order and Findings and Recommendations of United States Magistrate Judge ("F&R") issued by Judge Jeremiah C. Lynch. (Doc. 28.) Judge Lynch recommends that the Court dismiss Petitioner Killsontop's Amended Petition for Writ of Habeas Corpus. Judge Lynch also recommends that the Court deny Killsontop a certificate of appealability. Through appointed counsel, Killsontop timely filed objections to the F&R. (Doc. 29.)

**LEGAL STANDARD**

Killsontop is entitled to de novo review of those findings to which he has specifically objected. 28 U.S.C. § 636(b)(1)(C). Absent objection, the Court reviews findings and recommendations for clear error. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Thomas v. Arn*, 474 U.S.

140, 149 (1985). Clear error is "significantly deferential" and exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

Because the parties are familiar with Judge Lynch's thorough recitation of the facts and the procedural history in this case, the Court will restate neither here. (*See* Doc. 28 at 3–9.) First, Judge Lynch reached a preliminary finding that Killsontop's ineffective assistance of counsel claim is procedurally defaulted. (Doc. 28 at 10.) Killsontop does not specifically object to that finding, and in fact anticipated it in his Amended Petition. (Doc. 13 at 12.) Therefore, this Court reviews Judge Lynch's finding of procedural default for clear error.

Second, Judge Lynch found that the exception created by *Martinez v. Ryan*, 566 U.S. 1 (2012), fails to save Killsontop's claim from procedural default. (Doc. 28 at 20.) Killsontop specifically objects to this finding and argues that his claim falls within the *Martinez* exception, because his ineffective assistance claim is "substantial." (Doc. 29 at 4.) Accordingly, the Court reviews Judge Lynch's rejection of Killsontop's *Martinez* argument de novo.

Third, Judge Lynch recommended that the Court deny Killsontop a certificate of appealability. (Doc. 28 at 22.) Because he argues that the substantial nature of his ineffective assistance claim saves it from procedural default,

Killsontop specifically objects to this recommendation. (Doc. 29 at 4.) Therefore, the Court reviews the certificate of appealability issue de novo.

## DISCUSSION

**I. Because he failed to exhaust his ineffective assistance claim and Montana's procedural rules would now bar him from bringing the claim in state court, Killsontop's claim is procedurally defaulted.**

Under the procedural default doctrine of habeas law, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez*, 566 U.S. at 9. Procedural default occurs when: (1) state courts reject a claim based on "independent" and "adequate" state procedural grounds; or (2) "if [the claim] is unexhausted and state procedural rules would now bar the petitioner from bringing the claim in state court." *Rodney v. Filson*, 916 F.3d 1254, 1259 (9th Cir. 2019) (citations and quotation marks omitted); *see also* 28 U.S.C. § 2254 (b)(1)(A).

Despite their appearance as discrete routes to procedural default, the road to default through failure to exhaust merges seamlessly into the avenue to default through independent and adequate state procedural grounds. Because the exhaustion requirement "refers only to remedies still available at the time of the federal petition . . . it is satisfied if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152,

–3–

161 (1996) (citations omitted) (alterations in original). In other words, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Id.* at 162.

The exhaustion component of procedural default advances the federal policy "to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)). Furthermore, "the federal claim must be fairly presented to the state courts." *Picard*, 404 U.S. at 275. Because state courts cannot be faulted for failing to consider constitutional claims *sua sponte*, "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray*, 518 U.S. at 162–163 (citing *Picard*, 404 U.S. 770). Accordingly, a claim is unexhausted where a petitioner presents to the state courts only general appeals to broad constitutional guarantees. *Id.* at 163; *see also Anderson v. Harless*, 459 U.S. 4 (1982) (per curiam).

Killsontop's failure to raise his ineffective assistance claim in state court implicates the requirements in habeas of exhaustion and procedural default. While the record indicates that Killsontop has presented various claims to Montana's

courts, some alleging ineffective assistance of counsel, he has never presented them with the claim he now urges on the federal court. Here, Killsontop alleges that his trial counsel, Scott Spencer, ineffectively assisted him by failing to address his "competency to proceed to trial and [his] ability to assist in his own defense before trial and before he took the stand to testify during his trial." (Doc. 13 at 12.) An entirely different statement of facts form the basis for Killsontop's claim for habeas relief that he presented to the state court on direct or collateral appeal. (*See* Doc. 13-1 at 9–11.) There, his ineffective assistance claims ranged from allegations that Spencer failed to introduce Killsontop's statements into evidence, to Killsontop's general disagreement with witness testimony. (*Id.*) Nowhere does the record reflect that Killsontop alleged Spencer's ineffectiveness stemmed from a failure to challenge his competence.

Although Killsontop presented various factual theories to the state courts to support his ineffective assistance claims (*Id.*), the courts cannot be faulted for failing to consider, *sua sponte*, whether his trial representation was constitutionally insufficient for its failure to challenge his competence at trial. Therefore, although Killsontop advanced appeals to the state courts under the Sixth and Fourteenth Amendments' broad guarantee of effective assistance, the substance of the claim he presents here is unexhausted.

Killsontop's unexhausted ineffective assistance claim is procedurally defaulted, because Montana's procedural rules would now bar him from bringing the claim in its courts. His conviction became final on December 19, 2016. (*See* Doc. 13 at 3.) Under the Montana Rules of Criminal Procedure, the time for filing his state post-conviction petition expired on December 19, 2017. *See* Mont. Code Ann. § 46–21–102. Furthermore, and as the Respondent points out, Montana would also bar Killsontop's claim because it "reasonably could have been raised" in his previous three post-conviction petitions. *See* Mont. Code. Ann. § 46–21–105(1)(b).

Accordingly, the Court finds no clear error in Judge Lynch's preliminary conclusion. (Doc. 10.) Killsontop's ineffective assistance claim is unexhausted and Montana's procedural rules would now bar him from bringing the claim in state court. Therefore, his claim is subject to procedural default, preventing federal habeas corpus review, unless he can demonstrate cause and prejudice for the default. *See Gray*, 518 U.S. at 162.

## II. Killsontop fails to establish the prejudice required by *Martinez* to excuse his claim from procedural default.

When a claim is procedurally defaulted, federal review "is barred unless the habeas petitioner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice.'" *Rodney*, 916 F.3d at 1259 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Generally, the absence or ineffective assistance of state post-conviction counsel "cannot establish cause to excuse a procedural default because there is no constitutional right to counsel in state post-conviction proceedings." *Id.* However, there is a narrow exception to this general rule when the petitioner establishes a substantial claim of ineffective assistance of counsel. *Ramirez v. Ryan*, No. 10-99023, 2019 WL 4281731, at *7 (9th Cir. Sept. 11, 2019).

> **A.    Killsontop's claim is eligible to be saved from procedural default through *Trevino's* expansion of the *Martinez* exception.**

Under the *Martinez* exception, "the procedural default of a substantial claim of ineffective assistance of trial counsel is excused if state law requires that all claims be brought in the initial collateral review proceeding . . . and if in that proceeding there was no counsel or counsel was ineffective." *Id.* (citing *Martinez v. Ryan*, 566 U.S. 1, 17 (2012)). And, the Supreme Court clarified that *Martinez's* exception also applies where a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013).

As a threshold matter, *Trevino*'s expansion of the *Martinez* exception applies to Montana law.  Killsontop's state post-conviction proceedings would necessarily have been the first review proceedings with respect to the ineffective assistance claim he raises.  Montana law prohibits adjudication of an ineffective assistance of counsel claim on direct appeal "if it relates to matters outside of the record . . . unless it is unnecessary to ask 'why' counsel performed as he did." *State v. Chafee*, 332 P.3d 240, 245 (Mont. 2014).  "Though not easily distilled into a formula," *State v. White*, 30 P.3d 340, 344 (Mont. 2001), Montana's on-the-record requirement for ineffective assistance claims imposes a high bar for appellants seeking review on direct appeal.  "Only when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may [the Montana Supreme Court] review the matter on direct appeal." *Id.*  Montana has identified as "clearly non-record based areas of representation"—and therefore unreviewable on direct appeal— "counsel's failure to adequately investigate, or failure to prepare a defense, or failure to familiarize him or herself with critical areas of applicable law." *Id.* at 343.

Here, had Killsontop presented his instant claim on direct appeal to the Montana Supreme Court, it is unlikely that it would have determined that it was record-based.  He claims that Spencer rendered ineffective assistance for failing to address his competency to proceed to trial and to assist in his own defense. (Doc.

-8-

13 at 12.) Although the record includes a post-trial hearing transcript regarding Killsontop's conduct in jail while he awaited sentencing, it does not fully explain why Spencer allegedly failed to take action before trial to address his competence to proceed. (*See* Doc. 12 at 22.) In fact, Spencer stated at the hearing that Killsontop's then-existing, post-trial psychological condition and potential civil commitment "would have no significance to [his] criminal case," and that it was an issue "independent of the criminal case." (*Id.* at 23.) These statements fail to indicate a reason for Spencer's alleged inaction before and during trial to challenge Killsontop's competence. Because the record does not fully explain Spencer's alleged failures, the Montana Supreme Court would have rejected his claim as non-record-based and unreviewable.

Furthermore, as Judge Lynch noted and as the Court has previously held, for ineffective assistance claims that are not record-based, post-conviction proceedings are a Montana prisoner's first meaningful opportunity to present a claim. (*See* Doc. 28 at 12 (*citing Miller v. Kirkegard*, CV–13–13–GF–DWM, Or. re: *Martinez* at 25–26 (D. Mont. May 20, 2015)).) Accordingly, Killsontop's claim fits neatly into *Trevino*'s expansion of *Martinez*. That is, Montana's procedural framework, by reason of its design and operation, makes it highly unlikely in Killsontop's case that he would have had a meaningful opportunity to raise his claim of ineffective

assistance of trial counsel on direct appeal. Accordingly, if Killsontop establishes

cause and prejudice for his default, the *Martinez* exception excuses it.

**B.**    **Killsontop establishes cause for procedural default because he was unrepresented for his state post-conviction proceedings.**

Ordinarily, "to establish 'cause' under *Martinez*—the first part of

establishing 'cause and prejudice' to excuse a procedural default— [the petitioner]

must demonstrate that post-conviction counsel was ineffective under *Strickland v.*

*Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Ramirez*,

2019 WL 4281731, at *8. However, in contrast to a *Martinez* petitioner who was

represented by post-conviction counsel, "a petitioner who was not represented by

post-conviction counsel in his initial-review collateral proceeding is not required to

make any additional showing of prejudice over and above the requirement of

showing a substantial trial-level [ineffective assistance] claim." *Rodney*, 916 F.3d

at 1260 n. 2 (citing *Detrich v. Ryan*, 740 F.3d 1237, 1245–46 (9th Cir. 2013) (en

banc)).

Here, the parties do not dispute that Killsontop falls into the latter category

of habeas petitioners. He sought relief through three rounds of state post-

conviction petitions (*see* Docs. 21-16; 21-17; 21-18; 21-19), without the benefit of

attorney representation (*Id.*; *see also* Doc. 13 at 9). Therefore, Killsontop is not

required to make any additional showing over and above the requirement of showing a substantial claim of ineffective assistance of trial counsel.

### C.	Killsontop fails to establish prejudice for procedural default because he fails to raise a substantial ineffective assistance of counsel claim.

To establish "prejudice"—the second part of *Martinez*'s "cause and prejudice" analysis—Killsontop must demonstrate that his underlying ineffective assistance of trial counsel claim is "substantial." *Ramirez*, 2019 WL 4281731, at *8. A "substantial" claim is one that "has some merit." *Martinez*, 566 U.S. at 14. The safety net *Martinez* provides to otherwise defaulted claims "ought not put a significant strain on state resources." *Id.* at 15. Accordingly, "when faced with whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.*, it does not have any merit or that it is wholly without factual support." *Id.* at 15–16.

A "petitioner's claim of cause for a procedural default [must] be rooted in a *potentially* legitimate claim of ineffective assistance of trial counsel." *Cook v. Ryan*, 688 F.3d 598, 610 (9th Cir. 2012) (citations and internal quotation marks omitted) (emphasis added). By way of analogy, the *Martinez* Court incorporated the standard for issuing a certificate of appealability into its definition of substantiality. *Detrich*, 740 F.3d at 1245. As such, a claim is substantial if "reasonable jurists could debate whether (or, for that matter, agree that) the petition

should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). Under this standard, "a court should conduct a 'general assessment of the merits [ ],' but should not decline to issue a certificate 'merely because it believes the applicant will not demonstrate an entitlement to relief.'" *Cook*, 688 F.3d at 610 n. 13 (alteration in original) (quoting *Miller-El*, 537 U.S. at 336–37).

To that end, the Ninth Circuit has recently warned that when a district court considers *Martinez*'s prejudice prong, it must take care not to "collapse[] what should [be] a two-step process: first decide whether the procedural default is excused, and if so, then address the claim squarely, after allowing a chance for any necessary record or evidentiary development." *Ramirez*, 2019 WL 4281731, at n. 7. Therefore, it would be error to hold that procedural default is not excused "based on [the court's] conclusion that that [the petitioner's] ineffective assistance of trial counsel claim failed on the merits." *Id.* Instead, as discussed above, a district court must cabin its *Martinez* inquiry to a "general assessment of the merits" of the underlying ineffective assistance claim under the *Strickland* framework. *Id.* at *9 (citing *Cook*, 688 F. 3d at 610 & n. 13).

Before the Court begins its prejudice analysis under *Martinez*, however, it feels compelled to emphasize that the question raised by Killsontop's Amended

Petition (Doc. 13) is not whether Killsontop was competent at trial. Instead, Killsontop alleges that his trial counsel, Scott Spencer, rendered ineffective assistance by failing to address his competence to stand trial. (*Id.* at 12.) Therefore, Killsontop's competency itself is not the issue here, "save as evidence as to how it may bear on [Spencer's] responsibilities or might furnish a basis for finding a lack of prejudice." *See Robidoux v. O'Brien*, 643 F.3d 334, 338 (1st Cir. 2011).

With that in mind, the Court now turns to a "general assessment of the merits" of Killsontop's ineffective assistance claim under the paradigm set out in *Strickland v. Washington*. *See Rodney*, 916 F.3d at 1260. Under *Strickland*, the petitioner must make a dual showing of deficient performance and prejudice. 466 U.S. 668, 687 (1984). To establish deficient performance, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness," measured simply by way of "prevailing professional norms." *Id.* at 688. A court considering trial counsel's allegedly deficient performance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Furthermore, because the trial attorney interacted with the client and knew of materials outside the record, "even under *de novo* review, the standard for judging [his] representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

-13-

Trial counsel's failure to move for a competency hearing could qualify as unconstitutionally deficient performance under *Strickland*. *See Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011). A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and [if] he has a rational as well as factual understanding of the proceedings against him." *de Kaplany v. Enomoto*, 540 F.2d 975, 979 (9th Cir. 1976) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). Counsel renders ineffective assistance when "there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered," but counsel neglects to move for a competency hearing nevertheless. *Stanley*, 633 F.3d at 862 (citations and quotation marks omitted).

The Ninth Circuit recognizes a high bar for what constitutes "doubt" as to a defendant's competence to stand trial. *Clark v. Arnold*, 769 F.3d 711, 729 (9th Cir. 2014). When considering a trial judge's analogous obligation to hold a *sua sponte* competency hearing, "more is required to raise a doubt than mere bizarre actions or bizarre statements or statements of defense counsel that defendant is incapable of cooperating in his defense or psychiatric testimony that a defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference with

-14-

defendant's ability to assist in his own defense." *de Kaplany*, 540 F.2d at 182 (alterations omitted).

In other words, doubt as to competence must be supported by "substantial evidence that, due to a mental disease or defect, the defendant is either unable to understand the nature and consequences of the proceedings against him *or* to assist properly in his defense." *United States v. Garza*, 751 F.3d 1130, 1134 (9th Cir. 2014) (citation omitted) (emphasis in original). Relevant evidence in a competency inquiry "falls into three categories: medical history, the defendant's behavior in and out of court, and defense counsel's statements about the defendant's competency." *Garza*, 751 F.3d at 1134. The Ninth Circuit points to two schizophrenic defendants to demonstrate the substantial nature of the evidence required to trigger doubt about competence:

> *Basset* and *Darrow* are but two unextraordinary examples of the many cases where we have found that some medical evidence—even some medical evidence of an extraordinarily debilitating condition—does not rise to the level of substantial evidence.

*Id.* at 1135. Furthermore, of the relevant categories of evidence, "defense counsel [is] in the best position to evaluate [a defendant's] competence and ability to render assistance." *Williams v. Woodford*, 384 F.3d 567, 606 (9th Cir. 2004) (alterations in original).

Further, to establish prejudice as a result of trial counsel's deficient performance, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Under *Strickland*, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In other words, "the likelihood of different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. And, "conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.

Taking *Strickland*'s requirements in turn, Killsontop does not advance a substantial claim that Mr. Spencer's performance fell below an objective standard of reasonableness. First, the argument rings hollow that Spencer deficiently performed, because he "failed to address Mr. Killsontop's competency, knowing that he was a diagnosed schizophrenic." (Doc. 13 at 17.) Almost two months after the jury entered a guilty verdict in Killsontop's case (*see* Doc. 13-1 at 6), Spencer explained his understanding of Killsontop's mental condition at a civil commitment hearing (Doc. 12 at 37). To the court's concern that a civil finding of mental illness would implicate the Killsontop's criminal case, Spencer responded:

-16-

> [T]he fact that he was schizophrenic . . . had been an issue and was known at the time of me representing him, and it was known at the time of the incident he was living on his own, seeing a case manager, and there was no indication of problems.

(*Id.*)

Spencer did not "address" Killsontop's competency by way of a challenge, but the record demonstrates that he considered Killsontop's schizophrenia prior to and during trial. (*Id.*) His evaluation and decision not raise the issue of Killsontop's competency included an understanding that Killsontop's schizophrenia indicated no problems—at least at the time Spencer represented him. (*Id.*) Killsontop implies that, because his mental condition deteriorated in jail after trial, his schizophrenia necessarily became problematic before trial when "he was detained the entire time, subject to the medical care and monitoring of the jail staff." (Doc. 13 at 17.) However, there is no indication in the record that Killsontop's behavior in jail before trial resembled his problematic "post-conviction psychosis." (*See* Doc. 12 at 20.)

Spencer was in the best position to evaluate Killsontop's competence and his ability to render assistance. *See Williams*, 384 F.3d at 606. Spencer's mere awareness of Killsontop's schizophrenia throughout his representation—lacking any indication of problems— is hardly substantial evidence that should have triggered Spencer to doubt that Killsontop was either unable to understand the

nature and consequences of the proceedings against him or assist properly in his own defense. *See Garza*, 751 F.3d at 1134. In other words, Spencer's awareness that Killsontop was schizophrenic, standing alone, is not an objectively reasonable reason for Spencer to have doubted, and challenged, his competency to stand trial.

Furthermore, Killsontop's behavior in the courtroom at trial does not constitute substantial evidence that should have triggered Spencer to doubt his competence. *See Garza*, 751 F.3d at 1134. On two occasions during his direct examination, Spencer instructed Killsontop to refrain from going beyond the scope of his questions. (Doc. 13-1 at 64, 67.) However, Killsontop responded rationally to Spencer's questions, though perhaps in a long-winded fashion. Additionally, Killsontop's answers on cross-examination were responsive to the prosecutor and coherent, despite reflecting his admitted lack of education (Doc. 13-1 at 79) and his inability to articulate himself clearly for the court reporter's purposes (*Id.* at 79, 82).

Killsontop occasionally used the wrong words (*see Id.* at 82), and he cited to the Fourth Amendment to describe the prosecutor's underlying aim when he asked whether Killsontop "poked" one of the assault victims (*Id.* at 77). Although Killsontop characterizes these responses as "scattered" (Doc. 29 at 2), his answers demonstrate a rational, factual, and narrative understanding of the night of the assault, the subsequent police interrogation, and the charges against him. The

Court is unable to discern Killsontop's meaning in only one of his responses: "I am not a fabido (phonetic) person." (Doc. 13-1 at 82.) While perhaps unintelligible, more would have been required to trigger Spencer's doubt about Killsontop's competence. *See de Kaplany*, 540 F.2d at 182. Nothing about Killsontop's trial testimony constitutes substantial evidence that he was unable to understand the nature of the proceedings against him or to assist in his own defense. *See Garza*, 751 F.3d at 1134.

Although the Court's general assessment of the merits finds that Killsontop fails to raise a substantial ineffective assistance claim under the first prong of *Strickland*, it will nevertheless briefly address the second prong as well. Killsontop must show a reasonable probability that, but for Spencer's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. In Killsontop's view, had Spencer not failed to challenge his competence, the state trial court would have ordered a competency hearing and it would have found him incompetent. (Doc. 13 at 17.)

However, Killsontop's subsequent civil commitment hearing instructs the Court to reach a contrary conclusion. There, the same judge who presided over his trial two months earlier heard testimony on Killsontop's post-conviction mental state. (*See* Docs. 12 at 1; 13-1 at 14.) When the judge heard evidence that Killsontop was "observed to be eating his own feces in jail" (Doc. 12 at 7), he took

care to clarify with Spencer that the civil hearing was "independent of the criminal case" (*Id.* at 23). Furthermore, in looking to the Montana Criminal Code for guidance for placing Killsontop for pre-sentence care, the judge again confirmed that "all of [the Montana Criminal Code] seems to be geared towards mental disease or defect at the time of the offense committed and not some post-conviction psychosis." (*Id.* at 20.) And, even after hearing Killsontop's testimony at trial and his post-conviction conduct in jail, the judge stated: "the testimony I've got doesn't convince me that this guy is anything more than a sociopath." (*Id.* at 21.) Spencer jumped in then to confirm that Killsontop indeed suffered from schizophrenia (*Id.*); nevertheless, the judge responded that he was "more than satisfied [Killsontop] understands everything that's going on here and he's just making a deliberate decision not to participate." (*Id.* at 29.)

While the discussion summarized above focused on Killsontop's post-conviction mental condition, it still provides relevant insight into the question of whether the judge would have found Killsontop incompetent to stand trial if Spencer had so moved. The record lacks any indication that the judge doubted Killsontop's competence at the civil hearing, let alone that he harbored any doubts at trial that would have triggered his duty to *sua sponte* hold a competency hearing. Straining to find any reasonable probability that Killsontop would have been found incompetent to stand trial had the issue been raised and considered, the Court finds

none. *See Stanley*, 633 F.3d at 862. Killsontop does not raise a substantial ineffective assistance claim under *Strickland*'s prejudice prong.

Accordingly, the Court's "general assessment of the merits" of Killsontop's ineffective assistance claim leads to the conclusion that he fails to establish "prejudice" – the second step of Martinez's procedural default excuse. Reasonable jurists could not debate whether Killsontop's petition should be resolved in a different manner, and the issues he presents are not adequate to deserve encouragement to proceed further. *See Detrich*, 740 F.3d at 610 (quoting *Miller-El*, 537 U.S. at 336. Therefore, following de novo review, the Court agrees with Judge Lynch's finding that Killsontop's claim is procedurally defaulted.

## III. Because Killsontop fails to raise a substantial claim, he is denied a certificate of appealability.

When the district court enters a final order adverse to a habeas petitioner on procedural grounds, the issue of whether it should grant a certificate of appealability ("COA") is more complicated than an adverse order based on the merits:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While it admits that this

construction of 28 U.S.C. § 2253(c) is "somewhat" complex, the Supreme Court

explains that it is necessary in order to "give meaning to Congress' requirement

that a prisoner demonstrate substantial underlying constitutional claims and is in

conformity with the meaning of the 'substantial showing' standard provided in

[*Barefoot v. Estelle*][1]." *Id.* Therefore, where the district court invokes a plain

procedural bar to dispose of the case, "a reasonable jurist could not conclude either

that the district court erred in dismissing the petition or that the petitioner should

be allowed to proceed further. *Id.*

Here, and as discussed above, the Court has determined that Killsontop fails

to demonstrate that his ineffective assistance clam is substantial under precisely the

same "substantiality" standard for the issuance of a COA. *See Detrich*, 740 F.3d at

1245. Therefore, were the Court to issue a COA, it would undercut the entirety of

the Court's analysis on the prejudice prong in *Martinez*. In other words, after its

conclusion one page earlier that reasonable jurists could not debate whether

Killsontop's petition should be resolved differently, granting a COA would require

---

[1] In *Barefoot v. Estelle*, the Court explained:
> [I]n requiring a 'question of some substance', or a 'substantial showing of the denial of [a] federal right', obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'

463 U.S. 880, 893, and n. 4 (1983) (citations omitted) (alterations in original).

the Court to find that those same jurists *could* engage in a reasonable debate about

its resolution. Therefore, because the Court finds that Killsontop failed to raise a

substantial claim under the COA standard, it denies him a COA based on the same

reasons.

Accordingly, based on the foregoing, IT IS ORDERED that:

(1)     Judge Lynch's F&R (Doc. 28) is ADOPTED IN FULL.

(2)     The Amended Petition (Doc. 13) is DISMISSED WITH PREJUDICE.

(3)     A certificate of appealability is DENIED.

Dated this   11th   day of October, 2019.

Dana L. Christensen, Chief Judge
United States District Court